### Geo. H. McCollom v. Jane Pipe.

1. Courts—*State and Territorial—Jurisdiction.* The courts of the State cannot take cognizance of causes that were pending in the courts of the Territory, until provision is made by law for their transfer to the State courts.

2. There is no law for the removal to the State courts of causes cognizable in the district or circuit courts of the United States.

### *Error from Wyandotte District Court.*

THE question here is one of jurisdiction. An action was commenced in the territorial court sitting in Wyandotte county, in 1860, and was pending and undetermined when the State of Kansas was admitted into the Union, January 29, 1861. In 1869 the plaintiff caused a transcript of the record to be filed in the Wyandotte district court, amended his petition, and sued out process of summons. There were a large number of defendants, some being non-residents of the State. The defendants served entered a special appearance at the March Term, 1870, and on their motion the plaintiff's petition was dismissed for want of jurisdiction. The plaintiff brings the order of dismissal to this court by petition in error.

*I. B. Sharp* and *H. W. Cook*, for plaintiff in error:

1. The question involved in the motion to dismiss, is: Did the district court of Wyandotte county at any time acquire jurisdiction of the parties and of the subject of the action, by the filing of the original papers in the case in that court, or otherwise? We think it did.

The First Judicial District Court of the Territory of Kansas had full and complete jurisdiction both of the parties and of the subject of the action. Upon the organ-

ization of the State government by the adoption of the constitution, and its acceptance by Congress, the Territorial courts were abolished. Cases pending before the various territorial courts at the time of the change from a territorial to a State government, were removed by the constitution and laws of the State to the courts established by the constitution. Schedule to the Const., §§ 7, 8.

The fact that when the territorial courts were abolished the papers and records thereof were *deposited* in the United States court for the district of Kansas, is of no weight. They of right belonged to the courts of *the State*, and should have been deposited there.

2. Sec. 7 of the Schedule provides that the records, documents, books papers, moneys, and vouchers pertaining to the several territorial courts should be disposed of as may be provided by law, but not that the *cases or proceedings pending* should be disposed of as provided by law. These cases were by § 8 of said schedule continued in life, to "progress and be carried on" as if no change had taken place.

Section 8 of the Schedule cited is a grant of a right direct from the people to all persons interested in any or all of the suits, pleas, plaints, or proceedings pending in either of the territorial courts, to have the same prosecuted to final judgment and execution. This right could not be taken away from any individual to whom it attached, by the legislative power of the State.

The statute of 1861, passed by the Legislature of the State pursuant to said § 8 of said Schedule, provides that—"All suits, actions, prosecutions and proceedings pending, and all cases which have been tried and determined, both civil and criminal, in the several district courts of the late Territory of Kansas, sitting in and for the several counties for the trial of causes arising under

the laws of said Territory, together with all records, books, documents, papers and moneys, belonging or pertaining to the said several district courts, and also all suits, actions, prosecutions and proceedings pending, and all cases which have been tried and determined, both civil and criminal, in the district courts of the late Territory of Kansas, sitting in and for the several districts at large, except such as are cognizable in the Circuit or Districts Courts of the United States, together with all records, books, documents, papers and moneys, pertaining to and connected with such suits, actions, prosecutions and proceedings, shall be and the same *are* hereby *removed to the district courts* of the State sitting in and for the counties respectively in which such suits, actions, prosecutions and proceedings pending and cases which have been tried and determined originated, or to which the same may have been transferred by the late Territorial District Courts." Laws of 1861, p. 238, § 2.

By the force and effect of this act the case at bar was transferred to the State courts. It is the duty of a court to give force and effect to a law when it can be done consistently, rather than declare it null and void. 12 Wheaton, 270; 16 Pick, 87; 3 Denio, 394; 3 Kansas, 445; 3 Pick, 512.

*Cobb & Alden,* for defendants in error :

1. The courts of Kansas Territory had a dual jurisdiction—Territorial and Federal. The Territorial court took jurisdiction of this action as a case cognizable in the District or Circuit Court of the United States. The action was between a citizen of Massachusetts and citizens of other States and Kansas Territory, and was for a sum in excess of $500, which facts were alleged in the petition. It is therefore an action clearly cognizable in

McCollom v. Pipe.

the Circuit or District Court of the United States, and not a case referred to in the act of 1861, enacted in pursuance of § 8, schedule to the constitution, but is especially excepted therein.   Abb. U. S. Court Pr., 278, § 27; Laws of 1861, p. 238; schedule to Const., § 8.

2. The schedule to the constitution is a grant of power that only becomes operative upon the enactment of laws in pursuance thereof.   The law of 1861 is the only act upon the subject, and cannot be construed as transferring the case at bar to the State courts, as the action belonged to the *Federal* and not to the *Territorial* side of the territorial court.   The action itself, and the record thereof, properly passed to the U. S. Court for the District of Kansas.

3. The creation of the courts of Kansas territory having been in pursuance of the legislative power of congress to make all needful rules and regulations respecting the Territory and other property belonging to the United States, it follows that upon the admission of Kansas into the Union the courts of Kansas Territory *were abolished;* but the records, papers, and proceedings in these courts remained the property of the United States.   The State act of 1861, and § 8 of the schedule of the constitution of Kansas are nullities, because to make them operative, and empower the State of Kansas to take and use the property of the United States, the assent of Congress must be obtained.   No law of Kansas could affect any suit pending in the courts of the late Territory of Kansas until such assent has been obtained.   *Hunt v. Palao,* 4 Howard, 587; *Benner v. Porter,* 9 id., 235; *McNulty v. Batty,* 10 id., 72; 8 Wallace, 342.

*M. B. Newman,* also for defendant in error, contended that, when the Territorial courts were abolished, the case at bar, and all others of like character, thereby *abated—* and cited 1 Abb. U. S. Court Pr., 279.

The opinion of the court was delivered by

KINGMAN, C. J.: On the 3d of September, 1860, plaintiff in error brought his action in the first district court of the Territory of Kansas, sitting in and for the county of Wyandotte, for the trial of causes arising under the constitution and laws of the United States, by filing his petition therein. The petition alleges that the plaintiff was at the time a citizen and resident of the State of Massachusetts; that part of the defendants were citizens and residents of the Territory of Kansas, part of them citizens and residents of Missouri, and the remainder citizens and residents of New York. The object of the petition was to obtain judgment on certain notes amounting to $843.47, and interest for nearly as much more, and the foreclosure of a mortgage given to secure the payments of the notes, on certain real estate in Wyandotte county. Before the action was determined the court in which it was prosecuted ceased to exist by reason of the admission of Kansas as a State. On the 15th of October, 1869, the original papers, together with copies of certain proceedings in the cause had in the United States District Court for the District of Kansas, were filed in the clerk's office of the district court of Wyandotte county. On the 10th of March, 1870, certain of the defendants, being then served with process, moved the court to have the case stricken from the files of the court, appearing in court for the purpose of that motion only. This motion was granted. This order is claimed as error, and its reversal sought in this court.

The only question for us to determine, is, whether the case was by proper legal authority on the files of the Wyandotte District Court. With the history of the case,

from the admission of Kansas into the Union up to the time of its being filed in Wyandotte county, we have at present nothing to do. That the case was rightfully brought; that it is one cognizable by the Federal Courts, and that the court in which it was brought ceased to exist on the 29th of January, 1861, are conceded propositions. The plaintiff in error claims that the case was removed by virtue of the provisions of the schedule of the constitution in section eight. If this section were self-executing, such a conclusion might and probably would be correct, and we would then have to inquire how far the State authorities had power to control the property and records of the courts of the United States; but the section itself does not by its terms profess to make any change in the control of records, papers, etc., of any action, but charges the legislature with that duty by providing, in the latter part of the section, that "the legislature shall direct the mode in which such suits, pleas, plaints, prosecutions and other proceedings, and all papers, records, books, and documents connected therewith may be removed to the courts established by this constitution." Thus, while the constitution provided the jurisdiction, the mode of transferring cases to this jurisdiction was to be provided by law; and until some action of the legislature there could be no cases transferred on which the jurisdiction granted by the constitution could operate. The legislature in making provision for such change, saw fit to make provision for only such of the cases as were not cognizable in the Circuit and District Courts of the United States: §2, pp. 238-9, Laws of 1861.

The plaintiff in error claims that the exception in the section, as to such cases as are cognizable in the United States Courts, is unconstitutional, and must be disre-

garded. The argument is briefly this: The constitution contemplated the removal of all cases. The legislature in excepting a certain class of cases, disregarded the constitutional requirement, and their action in making the exception should be held for naught. The error in the reasoning is this: In providing for the removal of the records and papers of the courts of the late Territorial Courts to the State Courts, it was competent to do so by different laws and in different ways. They might provide for the removal of a part one year, and another part another year. In the law of 1861 they provided for the removal of a part only. They have done so by the terms of the law, in a way hardly susceptible of misconstruction. That the legislature has not seen fit to make provision for the removal of the residue of the cases, is no argument against the just construction and constitutionality of § 2, above referred to.

Again, plaintiff in error claims that such a construction should be given to § 2 of the law of 1861 as would except only such cases as were exclusively cognizable in the United States courts. To do this would require the interpolation of a word that would materially affect the status of a large number of cases not contemplated by the legislature. We find the language positive, and we are not authorized under the pretense of construction to enlarge it or add to it by what would more appropriately be called legislation than construction.

We are referred to § 4 of the act admitting Kansas into the Union to show what jurisdiction congress reserved to the Federal Courts, and by inference what was left to the State Courts. This section neither confers, nor was it possible for congress to confer any jurisdiction on the State Courts. That part of it which makes the Supreme Court of the State the successor of the Supreme Court

of the Territory for certain very limited purposes, was inserted to obviate certain difficulties that had previously arisen on the change from a Territorial to a State government in other cases. Congress had already made provision for the transfer of all cases of a Federal character and jurisdiction from the Territorial Courts to the Federal Courts: § 2, 9 Stat. at Large, pp. 211, 212, and § 8, 10 id., 130. See also *Express Co. v. Kountze Brothers*, 8 Wall., 343. Until, therefore, some legislation authorizing it, the district court had no rightful control of this case. It had no legal status in that court, and was properly dismissed, and its action in the premises is affirmed.

All the Justices concurring.